UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Melissa Rex, on behalf of
her daughter, A.R.,
    Claimant

    v.                             Civil No. 07-cv-48-SM
                                       Opinion No. 2007 DNH 154
Michael J. Astrue, Commissioner,
Social Security Administration,
    Respondent

## O R D E R

Melissa Rex moves to reverse the Commissioner's denial of
her daughter's application for children's Supplemental Security
Income benefits.  See 42 U.S.C. §§ 405(g) and 1383(c)(3) (the
"Act").  In support of that motion, Ms. Rex asserts that: the
Administrative Law Judge ("ALJ") erred in concluding that her
daughter's impairments did not functionally equal a listed
impairment; the ALJ failed to provide her with a fair hearing and
neglected to adequately develop the record; and the ALJ failed to
properly inform her of her right to (and the benefits associated
with) obtaining legal counsel.  Respondent objects and moves for
an order affirming the final decision of the Commissioner.

For the reasons set forth below, the Commissioner's motion for an order affirming his decision is denied.  Claimant's motion to reverse is granted to the extent it seeks a remand to the ALJ for further proceedings.

## Factual Background

I.  Procedural History.

Claimant, A.R., was born on January 27, 1999.  On June 9, 2005, her mother filed an application for Supplemental Security Income ("SSI") on her behalf, alleging an onset of disability date of December 1, 2002.  After that claim was denied, Ms. Rex requested a hearing before an ALJ.

On September 28, 2006, A.R.'s parents appeared and testified before an ALJ.  Approximately one month later, the ALJ issued his decision, concluding that A.R. was not disabled.  At the time, A.R. was seven years old and in second grade.  The ALJ's decision became final when the Appeals Council denied Ms. Rex's request for review.  She then filed this timely appeal and, in due course, a "Motion to Reverse The Unfavorable Action of the Commissioner" (document no. 10).  The Commissioner objected and

filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 12).  Those motions are pending.


II.  <u>Stipulated Facts</u>.

     Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 13), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.


                      **Standard of Review**

I.  <u>Properly Supported Factual Findings by the ALJ</u>
    <u>are Entitled to Deference</u>.

     Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C.

                              3

§§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1]

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

II.   Entitlement to Children's Disability Benefits.

In August of 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new (more rigorous) standard for defining childhood disabilities under the Social Security Act.  It provides, in pertinent part, that:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I).  See also 20 C.F.R. § 416.924.

In evaluating a child's application for SSI benefits, an ALJ must engage in a three-part inquiry and determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or combination of impairments that is severe; and, finally, (3) whether the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of the regulations.  See 20 C.F.R. §§ 416.924(b)-(d).  If, at the third step of the analysis, the ALJ determines that the child's

impairment does not meet or equal a listed impairment, the ALJ
must then consider whether the child's impairment "results in
limitations that functionally equal the listings."  20 C.F.R. §
416.926a(a).

An impairment "functionally equals" the listings if it
results in "marked" limitations in two domains of functioning, or
if it results in an "extreme" limitation in one domain.  Id.  The
six domains of functioning in which the child's abilities are
assessed are: (1) acquiring and using information; (2) attending
and completing tasks; (3) interacting and relating with others;
(4) moving about and manipulating objects; (5) caring for one's
self; and (6) health and physical well-being.  20 C.F.R. §
416.926a(b)(1).  An "extreme" limitation is one that "interferes
very seriously with [the child's] ability to independently
initiate, sustain, or complete activities. . . .  It is the
equivalent of the functioning we would expect to find on
standardized testing with scores that are at least three standard
deviations below the mean."  20 C.F.R. § 416.926a(e)(3).
Consequently, an "extreme" limitation would, generally speaking,

place the child in the lowest one percent (1%) of functioning in
that domain for the child's age group.

A "marked" limitation is one that "interferes seriously with
[the child's] ability to independently initiate, sustain, or
complete activities. . . .  It is the equivalent of the
functioning we would expect to find on standardized testing with
scores that are at least two, but less than three, standard
deviations below the mean."  20 C.F.R. § 416.926a(e)(2).  In
other words, a "marked" limitation would, generally speaking,
place the child in the lowest five percent (5%) of functioning in
that domain for the child's age group.  It is, then, a
substantial limitation.

## Discussion

I.   Background – The ALJ's Findings.

In concluding that A.R. was not disabled within the meaning
of the Act, the ALJ properly employed the mandatory three-step
sequential evaluation process described in 20 C.F.R. § 416.924.
Accordingly, he first determined that A.R. had not been engaged
in substantial gainful activity since her alleged onset date – an

7

unremarkable finding given her age.  Next, the ALJ concluded that
the medical evidence of record indicates that A.R. does suffer
from a "severe" impairment of attention deficit hyperactivity
disorder ("ADHD").  Transcript at 19.

     At the third and final step of the sequential analysis,
however, the ALJ concluded that A.R. does not have an impairment
or combination of impairments that meets or medically equals one
of the impairments listed in the pertinent regulations, nor does
she have an impairment or combination of impairments that
functionally equals a listed impairment.  Accordingly, the ALJ
concluded that A.R. is not disabled within the meaning of the
Social Security Act.

II.  Procedural Challenges.

     Based on her filings, it is difficult to know whether Ms.
Rex claims that A.R. suffers from an "extreme" limitation in one
domain of functioning, or that she suffers from "marked"
limitations in two domains; neither her complaint nor her
memorandum of law addresses the issue in any detail.  Instead,
Ms. Rex has focused on her assertion that the ALJ's adverse

disability determination was not supported by substantial evidence in the record.  She goes on to assert that, because the ALJ committed various procedural errors, he denied A.R. a fair hearing on her claim.

To be sure, there is not a great deal of evidence in the record to support the conclusion that A.R. is disabled (that is, "extremely" limited in one domain of functioning or "markedly" limited in two).  Nevertheless, the court agrees that the ALJ was obligated to more fully develop the record – particularly since the Childhood Disability Evaluation form completed by the non-examining physician, to which the ALJ ascribed "significant weight," transcript at 20, is so deficient as to be worthy of little, if any, discussion.[2]

Additionally, some of the conclusions reached by the ALJ are simply unsupported by logic or reason.  For example, in his decision, the ALJ wrote that, "The claimant's parent's explanation that [A.R.'s] absence at the hearing was because she

---

[2]      The non-examining physician's report provides, in its entirety, as follows: "Mother alleges all sorts of limitations, but teacher reports and testing reveals little in the way of limitations.  Most likely a parent/child relational problem."

was at school demonstrates the claimant's ability to function in age appropriate activities just as any other unimpaired child at like age." Transcript at 20.  Later, the ALJ concluded that her presence at school "demonstrates [A.R.'s] ability to function in a school setting." Transcript at 22.  The court disagrees.  At most, all one can infer from A.R.'s attendance at school is that she was able to successfully navigate the half−mile walk to school that day with her mother.  <u>See</u> Transcript at 195.  It says nothing about her ability to function well or appropriately in a school setting, nor does it shed any light on whether she might be disabled within the meaning of the Act.

While the differential diagnostic report prepared by Dr. Fitzgerald, transcript at 121−30, may not be sufficiently conclusive to constitute "substantial evidence" of A.R.'s disability, it does suggest the need for further investigation and, possibly, additional testing.  Among other things, Dr. Fitzgerald concluded that, given the results of his testing, there were "suggestions of learning disability issues [] across Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing Speed areas." Transcript at 128.  He also noted that

10

it "would be helpful to make sure that there are no significant
difficulties with hearing or vision that might be contributing to
[A.R.'s] learning problems."  Ultimately, Dr. Fitzgerald
concluded that:

> There is every indication that [A.R.] has an ADHD
> substrate.  It would be beneficial for her parents to
> talk with Mr. Jacobson about the possibility of a trial
> on stimulant medication to see if that helps [A.R.]
> function more effectively.  However, <u>it is also
> important to rule out</u> any hearing or vision issues, <u>and
> to further explore</u> the ocular motor difficulties (lazy
> eye), for which she has already been treated.  There
> were also indications of language processing
> difficulties, particularly receptive language, visual
> perceptual motor difficulties, and reading difficulties
> that <u>require further specialized assessment</u> from the
> speech and language specialist, occupational therapist,
> and reading teacher, respectively.  [A.R.] shows a
> profile with several co-occurring issues.  They all
> need to be fully assessed and treated for [A.R.] to
> function successfully.

Transcript at 129-30 (emphasis supplied).

Given the largely undeveloped nature of the record,
particularly in light of Dr. Fitzgerald's recommendation that
A.R. undergo further testing, the ALJ's independent obligation to
fully develop the record, and the limited abilities of A.R.'s
parents (and the adverse effect that plainly had on their ability

to fully present A.R.'s case), <u>see</u> claimant's memorandum at 4-5, principles of fairness and equity counsel in favor of remanding this matter to the ALJ for further consideration on a better developed record.  Among other things, the ALJ should determine whether further testing of A.R. is warranted and, if not, he should articulate the basis or bases for that conclusion.  He might also wish to solicit a more complete evaluation from either an examining or a non-examining physician.  And, if he should elect to give greater weight to the non-examining physician's opinions than those of Dr. Fitzgerald (or another examining physician), the ALJ should explain his reasons for doing so.

### Conclusion

Ms. Rex bears a heavy burden to demonstrate that A.R. is disabled within the meaning of the Act.  And, it might well be that she cannot carry that burden, particularly given A.R.'s apparent improvement with medication, her reasonably successful performance in school, and the fact that the behaviors that gave rise to her parents' concerns about dyslexia appear to have resolved themselves as A.R. has matured.  Nevertheless, any decision regarding A.R.'s disability should be based upon a

reasonably developed record, including, if the ALJ deems it appropriate, the additional testing recommended by Dr. Fitzgerald.

For the foregoing reasons, as well as those set forth in claimant's memorandum, claimant's motion to reverse the unfavorable action of the Commissioner (document no. 10) is granted in part, and denied in part.  It is granted to the extent it seeks an order remanding this proceeding to the ALJ for further consideration.  In all other respects, that motion is denied.  The Commission's motion for order affirming his decision (document no. 12) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is hereby remanded to the ALJ for further proceedings consistent with this order and, if the ALJ deems it appropriate, taking additional evidence and/or ordering additional testing of A.R. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

December 10, 2007

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     David L. Broderick Esq.