UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Melissa Rex, on behalf of
her daughter, A.R.,
    Claimant

    v.                                    Civil No. 07-cv-48-SM
                                       Opinion No. 2009 DNH 042
Michael J. Astrue, Commissioner,
Social Security Administration,
    Respondent


**O R D E R**


By prior order, the court vacated the Commissioner's denial of Melissa Rex's application, filed on behalf of her daughter, for children's Supplemental Security Income Benefits, and remanded the case for further proceedings (document no. 15) (the "December Order").  Ms. Rex now moves for an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA").  The Commissioner opposes claimant's motion for fees on grounds that the government's litigation position and agency action in this case were both "substantially justified" within the meaning of the EAJA.  He does not, however, challenge the amount claimant seeks to recover in fees.


For the reasons set forth below, claimant's motion for an award of attorney's fees is granted.

## Standard of Review

The Equal Access to Justice Act ("EAJA") provides, in pertinent part, that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, <u>unless the court finds that the position of the United States was substantially justified</u> or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis supplied).  The EAJA is unlike typical fee-shifting statutes, which generally authorize an award of costs and/or reasonable attorney's fees to a "prevailing party."  Instead, to recover fees under the EAJA, a party must not only prevail, but the court must also conclude that the government's position was not substantially justified. See <u>McDonald v. Secretary of Health & Human Services</u>, 884 F.2d 1468, 1469-70 (1st Cir. 1989) ("Under EAJA, . . . the government must foot the legal bills of its adversaries . . . only if the adversaries 'prevail' and if the government's position is not 'substantially justified.'").

Under the EAJA, the "government's position" in this case includes not only the Commissioner's arguments before this court, but also the conduct of both the administrative law judge ("ALJ")

in denying claimant's application for benefits and the Appeals
Council's decision to decline review.  See 28 U.S.C. §
2412(d)(2)(D) ("'position of the United States' means, in
addition to the position taken by the United States in the civil
action, the action or failure to act by the agency upon which the
civil action is based.").  See also Cummings v. Sullivan, 950
F.2d 492, 497 (7th Cir. 1991); Brunel v. Commissioner, Social
Sec. Admin., 2000 WL 1815946, 2 (1st Cir. 2000).

   In opposing a party's request for fees under the EAJA, the
government bears the burden of demonstrating that its position
was substantially justified.  See, e.g., Scarborough v. Principi,
541 U.S. 401, 414 (2004) ("The burden of establishing 'that the
position of the United States was substantially justified,'
§ 2412(d)(1)(A) indicates and courts uniformly have recognized,
must be shouldered by the Government.").  See also McDonald, 884
F.2d at 1475.  The Supreme Court has explained that the
government carries its burden by demonstrating that its position
had "a reasonable basis in law and fact" and was justified "to a
degree that could satisfy a reasonable person."  Pierce v.
Underwood, 487 U.S. 552, 565 and 566 n.2 (1988).  In other words,
the government's position will be considered "substantially
justified" if "reasonable people could differ as to the

3

appropriateness of the contested action."  <u>Id</u>. at 565 (citation

and internal punctuation omitted).


## Discussion

In granting claimant's motion to remand this matter for

further proceedings, the court concluded that the record before

the ALJ was inadequately developed.  Among other things, the

court noted that:


> the ALJ was obligated to more fully develop the record
> – particularly since the Childhood Disability
> Evaluation form completed by the non-examining
> physician, to which the ALJ ascribed "significant
> weight," transcript at 20, is so deficient as to be
> worthy of little, if any, discussion.


December Order at 9 (footnote omitted).  The court also concluded

that "some of the conclusions reached by the ALJ [were] simply

unsupported by logic or reason."  <u>Id</u>.


> For example, in his decision, the ALJ wrote that, "The
> claimant's parent's explanation that [A.R.'s] absence
> at the hearing was <u>because she was at school</u>
> <u>demonstrates the claimant's ability to function in age</u>
> <u>appropriate activities just as any other unimpaired</u>
> <u>child at like age</u>."  Transcript at 20.  Later, the ALJ
> concluded that <u>her presence at school "demonstrates</u>
> <u>[A.R.'s] ability to function in a school setting."</u>
> Transcript at 22.  The court disagrees.  At most, all
> one can infer from A.R.'s attendance at school is that
> she was able to successfully navigate the half-mile
> walk to school that day with her mother.  <u>See</u>
> Transcript at 195.  It says nothing about her ability
> to function well or appropriately in a school setting,

nor does it shed any light on whether she might be
disabled within the meaning of the Act.

Id. at 9-10 (emphasis supplied).


Finally, the court concluded that the differential
diagnostic report prepared by Dr. Fitzgerald, while not
conclusive evidence of A.R.'s disability, unmistakably suggested
the need for additional testing.   Id. at 10.

> Among other things, Dr. Fitzgerald concluded that,
> given the results of his testing, there were
> "suggestions of learning disability issues [] across
> Verbal Comprehension, Perceptual Reasoning, Working
> Memory, and Processing Speed areas."  Transcript at
> 128.  He also noted that it "would be helpful to make
> sure that there are no significant difficulties with
> hearing or vision that might be contributing to
> [A.R.'s] learning problems."  Ultimately, Dr.
> Fitzgerald concluded that:
>
>> There is every indication that [A.R.] has an ADHD
>> substrate.  It would be beneficial for her parents
>> to talk with Mr. Jacobson about the possibility of
>> a trial on stimulant medication to see if that
>> helps [A.R.] function more effectively.  However,
>> it is also important to rule out any hearing or
>> vision issues, and to further explore the ocular
>> motor difficulties (lazy eye), for which she has
>> already been treated.  There were also indications
>> of language processing difficulties, particularly
>> receptive language, visual perceptual motor
>> difficulties, and reading difficulties that
>> require further specialized assessment from the
>> speech and language specialist, occupational
>> therapist, and reading teacher, respectively.
>> [A.R.] shows a profile with several co-occurring
>> issues.  They all need to be fully assessed and
>> treated for [A.R.] to function successfully.

Id. at 10-11 (quoting administrative transcript at 129-30)

(emphasis supplied in December Order).


To be sure, the Commissioner's arguments before this court

in support of the ALJ's adverse disability determination were

cogent and well-supported.  That does not, however, compel the

conclusion that the government's position throughout this process

was "substantially justified."  In fact, in light of the record

presented to this court on appeal, and the conclusions set forth

in its December Order, the court is constrained to concluded the

ALJ's failure to more fully develop the administrative record (as

is his obligation), as well as the Appeals Council's decision to

decline review, were not substantially justified.


Given the claimant's modest means, the sparse nature of the

medical record presented to the ALJ, and the unequivocal opinion

of Dr. Fitzgerald that further testing of A.R. was in order, the

government had an obvious obligation to more fully develop that

record before ruling on the merits of claimant's application.  As

the Supreme Court has observed:

> The differences between courts and agencies are nowhere
> more pronounced than in Social Security proceedings.
> Although many agency systems of adjudication are based
> to a significant extent on the judicial model of
> decisionmaking, the SSA is perhaps the best example of
> an agency that is not.  Social Security proceedings are
> inquisitorial rather than adversarial.  It is the ALJ's

> duty to investigate the facts and develop the arguments
> both for and against granting benefits, and the
> Council's review is similarly broad.

Sims v. Apfel, 530 U.S. 103, 110-11 (2000) (citations and
internal punctuation omitted).  See also Evangelista v. Secretary
of Health & Human Services, 826 F.2d 136, 142 (1st Cir. 1987);
Currier v. Secretary of Health, Educ. & Welfare, 612 F.2d 594,
598 (1st Cir. 1980).  See generally 404 C.F.R. § 404.1545(a)(3)
("[B]efore we make a determination that you are not disabled, we
are responsible for developing your complete medical history,
including arranging for a consultative examination(s) if
necessary, and making every reasonable effort to help you get
medical reports from your own medical sources.").

     Finally, it is probably worth addressing one argument
advanced in the Commissioner's opposition.  The Commissioner
points out that, in the December Order, the court recognized that
"there is not a great deal of evidence in the record to support
the conclusion that A.R. is disabled (that is 'extremely' limited
in one domain of functioning or 'markedly' limited in two)."
December Order at 9.  Based upon that observation, the
Commissioner argues that, when the evidence of disability is very
close or even in equipoise, the government's position (in
opposition to an award of benefits) is, at least in the typical
case, "substantially justified."

But, as the court pointed out in the December Order, the
question was not whether there was substantial evidence to
support the claimant's position, but rather whether the ALJ
should have recognized the need to augment the (sparse) existing
record by, for example, ordering the additional tests suggested
by Dr. Fitzgerald.  He did not.  So, while the Commissioner may
be correct in asserting that claimant failed to meet her burden
of proof before the ALJ (this court never resolved that issue),
it is not dispositive of her request for fees.  The court did not
remand the matter based upon a perceived error in the way the ALJ
weighed the available evidence.  Instead, it remanded the matter
because the ALJ (and the Appeals Council) committed a substantial
error by failing to recognize the obvious need to supplement
A.R.'s medical record, so a truly informed response might be
provided to her application for Social Security benefits.  That
error tainted the entire process of reviewing claimant's
application and formed the basis of this court's decision to
remand the matter for further proceedings.


### Conclusion

In light of the foregoing, the court concludes that the
Commissioner has failed to carry his burden of demonstrating that
his position throughout this process was "substantially
justified."  See 28 U.S.C. § 2412.  Claimant is, then, entitled

an award of reasonable attorney's fees.  As noted above, the Commissioner does not challenge the <u>amount</u> claimant requests; rather, he challenges only her legal entitlement to those fees. Accordingly, claimant's initial request for fees (document no. 17), as well as her supplemental request for fees (document no. 23) are granted.


The Clerk of Court shall enter an amended judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 31, 2009

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     Robert J. Rabuck,Esq.

9